FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

JUL 6 2004
LUTHER D THOMAS, Clerk
By: _____ Deputy Clerk

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION
ATLANTA, GEORGIA

| | |
|---|---|
| BABTUNDE OGUNDIPE <br> A#76534482 <br> PETITIONER <br><br> vs. <br><br> TOM RIDGE, as Secretary of <br> Department of Homeland Security, <br> MICHAEL J GARCIA, as Assistant <br> Secretary, Immigration and Customs <br> Enforcement, and MIKE ROZOS, as <br> Atlanta District Director of <br> Immigration and Customs <br> Enforcement | CIVIL ACTION FILE NO. 04-cv-1993-CAM |

## PETITION FOR WRIT OF HABEAS CORPUS

Comes now petitioner Babatunde Ogundipe (hereinafter "petitioner"), and files this Petition for writ of Habeas Corpus.

**(1)**

Petitioner is a native and citizen of Nigeria and is currently in the physical custody of Atlanta district office of the Immigration and Customs Enforcement (hereafter "ICE"), at the Tensas Parish Detention Center in Waterproof, Louisiana.

**(2)**

This court has jurisdiction over respondents TOM RIDGE, Secretary of Homeland Security, MICHAEL J. GARCIA, as Assistant Secretary of Immigration and Customs Enforcement, and MIKE ROZOS as Atlanta District Director of Immigration and

Customs Enforcement (herein "Respondents") because respondents can be reached by service of process. **See: eg., BRADEN v. 30th Judicial Circuit court of Kentucky; 410 U.S. 484, 495 (1973)**

(3)

This court has jurisdiction under 28 U.S.C. Sec 2241 et seq and sec 1331. Petitioner was issued a final order of removal on January 17, 2001 after petitioner waived his right to contest deportability. Thus making his **final order January 17, 2001.**

(4)

These proceedings are governed by the Immigration and Nationality Act (hereinafter "INA") consequently 2241 habeas remains available to petitioner. There are no Administrative remedies for petitioner to exhaust.

(5)

Venue is proper in this district under 28 U.S.C. § 1391 (e). The respondents are employees of the United States government, they reside in the northern district of Georgia and events given rise to his claim occurred there.

## SPECIFIC ALLEGATIONS

Petitioner alleges that:

(6)

This action arises under the Constitution of The United States, and The Immigration and Nationality act ("INA"), 8 U.S.C.§ 1101 et seq., as amended by the illegal immigrant Reform and immigrant responsibility act of 1996 ("IIRIRA") Pub. L. NO. 104-208,110 Stat. 1570 and the Administrative Procedure Act ("APA"), 5 U.S.C.§ 701 et seq.

(7)

This court has jurisdiction under 28 U.S.C.§ 2241. art I § 9, Cl 2 of The United States Constitution ("Suspension Clause"); and 28 U.S.C. § 1331, as petitioner is presently in custody under color of the authority of The United States, and such custody is in violation of the constitution, laws, or treaties of the United States.

(8)

This court may grant relief pursuant to 28 U.S.C. § 2241, 5 U.S.C. § 702, and the All Writ Act. 28 U.S.C. § 1651. **See; eg Mayers. United States Immigration & Naturalization Service** *175 F 3d 1289, 1299 (11th Cir 1999);* **Henderson v. Reno 157 F 3d 106, 122** (2nd cir 1988),cert. Denied sub. Nom. **Reno v. Navas** 119 S Ct 1141 (1999),. This court may grant relief pursuant to 28 U.S.C. §1241. The Administrative Procedure Act, 5 U.S.C. §§ 701-706, The Declarative Judgement Act, 28 U.S.C. §2201 et. Seq., and TheAll Writ Act, 28 U.S.C. §1651.

(9)

Petitioner, Babatunde Ogundipe, is a native and citizen of Nigeria ordered deported on January 17, 2001 in Abstentia after petitioner provided INS with a new address during the adjustment of status process and the service sent correspondence to the former address. Petitioner did not appeal this order, as petitioner was not aware. In 1997, petitioner married a U.S citizen. They filed an application for petitioner for adjustment of status to that of permanent residence. They divorced prior to petitioner's adjustment of status on or about December of 1998. Unbeknownst to petitioner, he was placed in deportation proceedings and deported in absentia on **Jan 17, 2001, the date of his <u>final order.</u>**

(10)

On March 31, 2001, petitioner married another U.S citizen, and filed for adjustment of status without the assistance of counsel. On page 2 of form I-485 petitioner answered "YES" to the question: "Have you ever applied for Permanent Resident Status in the U.S? In response to further information, petitioner answered " May 97, Divorce." Petitioner was granted lawful permanent status on March 3, 2003.

Petitioner departed for the United Kingdom on April 2003 *for 10 days* on his newly issued permanent Resident status and he returned and was admitted back into the United States without incident. Petitioner traveled to Nigeria in December 2003 for a 10-day visit and returned on January 1, 2004 at which time ICE authorities at John. F. Kennedy International airport informed him that he was ordered deported and couldn't understand why when he had a newly issued Green Card. And petitioner had just undergone FBI background check and immigration status check as part of petitioner's application for employment in September 2003 with the Center for Disease control in Atlanta and he was cleared. New York authorities paroled petitioner into the United States to a deferred inspection in Atlanta 3 weeks later on January 22.2004 at which time petitioner was taken into ICE's custody and has been in custody ever since.

(11)

Petitioner Statutory removal period ended on April 22, 2004. In May 2004 Petitioner personally pleaded with ICE Officer Terri Micheal to send him to his home country who informed him that ICE was short-staffed and would get to him when they could. But recommended that if Petitioner could contact his consulate and secure a travel document would help. Petitioner contacted his consulate and gave the pertinent information as

required. The consulate informed him that they would be contacting Nigeria and after the verification process, they would contact him as to the issuance of the travel document. On the week of June 17, 2004, Petitioner wife received a telephone phone call from the Nigerian Consulate denying petitioner's request for travel documents. In absence of travel documents, petitioner cannot be removed in the foreseeable future. Petitioner is not a danger to the community as petitioner has resided continuously in the United States for 9 years and has no criminal record. Petitioner is also not a flight risk as he has strong ties to the community as petitioner owns a home at 10765 Mortons crossing, Alphatetta, GA 30022 and was enrolled in a masters degree at Georgia Institute of Technology. Petitioner is also very active in the church as well as other community organizations. Petitioner was also working as a budget analyst at the Center for Disease Control, Atlanta, GA at the time of his arrest.

### (12)

Petitioner's motion for bond was denied on February 10, 2004 by Immigration Judge Cassidy on grounds that petitioner was an arriving alien and was not admissible to the United States. The Supreme Court has ruled that a returning lawful permanent resident is not subject to admissibility review upon return from an "innocent, casual and brief" trip abroad that was not meant to be "meaningfully interruptive" of his or law lawful admission status. **Rosenberg v. Fleuti, *374 U.S.449 (1963).*** It is also a violation of the Fifth Amendment due process to subject returning lawful permanent residence to admissibility review if the his or her departure was not a meaningful interruption of previously conferred lawful admission status in the United States. **Made v. Ashcroft,**

*Civil No 01-1039 (D. N.J 2001);* **Richardson v. Reno,** *994 F. Supp. 1466, 1471 (S.D. Fla. 1998)*

(13)

Petitioner's motion to reopen his deportation case of Jan 17, 2001 was denied by Judge McKenzie Rast on May 10, 2004 on grounds that because of petitioner's subsequent departures from the Unites States; the Judge had no jurisdiction to reopen petitioner's deportation case. Judge Rast also stated that Petitioner's former attorney was served with a notice to appear. Petitioner only departed the United States after he was issued a permanent resident card and petitioner departed on that permanent card. The United States Court Of Appeal has ruled that the government may be precluded from benefiting from its own wrongful conduct even where the Act, "read in vacuo, might suggest a different result." **Corniel-Rodrigues v. INS,** *532 F.2d 301 (2nd Cir. 1976)*

Petitioner asserts equitable estoppel on grounds that ICE allowed him to rely on his permanent resident card thus departing the United States on the card. Federal circuits courts have rule that rise to equitable estoppel arises when the party making the representation had reason to believe the party asserting estoppel would rely on it. And that the party asserting estoppel relied on the misrepresentation to his detriment. **Heckler v. Community Health Services,** *467 U.S 51 (1984;* Heckler, *467 U.S at 59.*

Petitioner also asserts estoppel on grounds that INS acted "willfully, wantonly, recklessly and negligently" in sending correspondence to petitioner's former address even though he provided INS with a new address, serving petitioner's former attorney who had already informed INS he no longer represented petitioner, deporting petitioner in absentia and

granting petitioner lawful permanent resident status especially after petitioner disclosed to INS on his second adjustment of status application that he had previously filed an adjustment of status application in May 1997. **Fano v. O'Neill, *806 F.2d 1262 (5th Cir. 1987)***

The Fifth Amendment's due process clause protects against government deprivation of life, liberty, or property without fair and adequate procedures. **Matthews v. Eldridge, *424 U.S 319 (1976)***

(14)

Petitioner need not exhaust further administrative remedies. The statute in question, 8 U.S.C. § 1231 (a) (6) has no exhaustion requirements. Exhaustion is required only when Congress specifically mandates it. **McCarthy v. Madigan, *503 US 140,144 (1992)*.** In all other instances "sound judicial judgement governs" **Id.**

The Supreme Court has recognized that Courts should not require exhaustion where there is an unreasonable or indefinite timeframe for administrative action. Id. at 1047. here HQPDU is not required to issue a decision at any length of time. 8 CFR§241.13(g).

(15)

In Zadvydas v. Davis, 533 U.S. 678 (2001) the Supreme Court has held that six months is the presumptive reasonable period during which ICE may detain alien's removal in the reasonably foreseeable future. Id at 702. Interim.

**The six-month presumptively reasonable removal period for petitioner ends on July 22,2004.**

(16)

Sec 1231 (a) 6 does not draw any distinction between aliens who are removable on the ground of inadmissibility and those removable on grounds of deportability, and therefore Zadvydas' holding applies to both inadmissible and admissible aliens under a final order of removal. **XI v. INS 298 F 3d 832,835-36 (9th Cir 2002)** Chinese nationals apprehended at sea and therefore inadmissible ordered released under Zadvydas; **Borrero v. Aljets, 178 F> Supp. 2d 1034, 1041-44D.Minn. 2001**

(17)

Petitioner has exhausted his administrative remedies to the extent required by law, and his only remedy is by way of this judicial action.

(18)

The ultimate authority to interpret and give meaning to federal statues is vested in the courts of the United States, and not in the administrative agencies that are charge with enforcing those statutes. See U.S. Constitution; Art III.

(19)

Petitioner remains detained by ICE. This restraint on petitioner's liberty is in violation of the Constitution, Laws and, treaties of the United States.

## PRAYER FOR RELIEF

(20)

Petitioner prays this court to order ICE to release petitioner pursuant to the fifth Amendment of the United States Constitution. Petitioner also prays the court to restore his lawful permanent status also pursuant to the fifth amendment of the United States Constitution.

### (21)

The facts upon which this petition is based are derived from petitioner's personal Knowledge and from the records and decisions of the Executive Office of Immigration Review, the former Immigration and Naturalization Service and ICE

### (22)

No petition for writ of Habeas Corpus has previously been filed in any court to review decisions and actions described herein.

WHEREFORE. Petitioner prays that a writ of Habeas Corpus shall be issued directed to the respondents, requiring them to show cause why petitioner should not be discharged from the restraint of his liberty now imposed on him by the respondents.

WHEREFORE. petitioner also prays that this court grant such other and further relief as this court seems proper under the circumstances.

Respectfully submitted this __25__ day of __JUNE__ 2004

_____

Babatunde Ogundipe A76534482
Tensas Parish Detention Center
HC 62 BOX 500
Waterproof, La. 71375